### E. L. Clover, Executor, Appellee, v. Modern Woodmen of America, Appellant.

### Gen. No. 4,916.

1. EVIDENCE—*when testimony of wife incompetent.* A wife is incompetent as to statements and confessions made to her by her husband, and such incompetency continues after his death.

2. EVIDENCE—*when testimony of wife competent.* In an action upon an insurance policy, the wife of the deceased insured is competent to testify to a conversation with a beneficiary named in the certificate; also, such wife is competent as to facts learned during the existence of the marital relation in ways other than by conversations with or admissions by her husband—the suit being one to which neither she nor the estate of her husband is a party.

3. INSURANCE—*phrase "sound body, mind and health," defined.* *Held,* that the following instruction correctly defined the phrase "sound body, mind and health."

"The court instructs the jury that the words 'sound body, mind and health, and free from disease or injury,' as used in the application which forms part of said policy, does not import that the insured at the time of making said application is absolutely free from all infirmities, or from all tendency to disease, but that the person said to be of sound body, mind, and health and free from disease or injury, is in a reasonably good or sound state of physical and mental health, and that he is free from any disease or illness that tends seriously or permanently to weaken or impair his constitution.

4. AMENDMENTS AND JEOFAILS—*what essential to amendment of record after lapse of term.* In order to amend a record after the lapse of the term, it is essential that there be some official or *quasi*-official note, memorandum or memorial paper remaining in the files of the case or upon the records of the court upon which such amendment may be predicated; such an amendment cannot be based upon the recollection of the judge or other person, or be based upon *ex parte* affidavits or testimony.

Assumpsit. Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court

at the October term, 1907.   Reversed and remanded.   Opinion filed August 10, 1908.

TRUMAN PLANTZ and CORNELIUS REARDON, for appel-lant.

J. W. RAUSCH, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On April 20, 1900, Thomas F. Clover made application for admission with insurance to the Modern Woodmen of America.  His application was accepted and a benefit certificate issued payable to his wife.  On February 1, 1906, the beneficiary was changed from his wife to his mother, Susan D. Clover.  On April 18, 1906, Clover died, and on May 17, 1906, Susan D. Clover died testate, naming appellee as her executor, who instituted this suit in the Circuit Court of Grundy county, on August 21, 1906, to recover the indemnity stipulated in the certificate.  The declaration counted on the benefit certificate.  To this declaration, appellant interposed the general issue, and a special plea averring that certain representations and declarations made by the deceased in his application for insurance were not true, and that by reason of the untruthfulness thereof the benefit certificate became void.  There was a trial, a verdict for appellee for $2,070.62; a motion for a new trial was denied; judgment was entered on the verdict; and this is an appeal by defendant to review said judgment.

In the application, in answer to questions, deceased stated that he was of sound body, mind and health, and free from disease or injury; that he had not, within seven years, been treated by or consulted a physician in regard to personal ailments; that he never had had piles, syphilis, stricture or a venereal disease.  Appellant sought to prove that these answers were untrue and that the appellant had had a venereal disease which resulted in locomotor ataxia with which he had been

severely affected for a long time, and that he had been treated by a physician for a long time, much less than seven years before the application was made. The evidence on that subject was very conflicting, there being positive evidence on the part of appellant that the answers in the application of deceased were false, and other facts and circumstances tending to indicate that this testimony was untrue. Appellant took the deposition of Losta Clover, widow of deceased, who was the original beneficiary in the certificate, and that deposition was offered in evidence. Appellee objected to its introduction on the ground that the deponent was incompetent as a witness because she was the surviving widow of Thomas F. Clover, upon whose life the insurance was sought to be recovered. That objection was sustained, and appellant preserved an exception thereto.

Section 1, chapter 51, Hurd's Statutes, 1905, makes all witnesses competent to testify unless they come within some of the exceptions. Section 5 of the same act makes husband and wife incompetent to testify for or against each other with certain exceptions, and in a proviso enacts that nothing therein contained shall make them ever competent to testify to any admissions or conversations by the other or by either of them to a third person, except in actions between them as husband and wife.

A considerable portion of the deposition excluded was made up of testimony of the witness, Losta Clover, relative to statements and confessions made to her by her husband. All that testimony was clearly incompetent and properly excluded. She also testified to a conversation with Mrs. Clover, the mother of deceased and the substituted beneficiary in the certificate, which was also excluded. We see no reason why she was not competent to testify to that conversation. The conclusion of the witness as to what the mother meant by what she said was clearly incompetent. There were

other matters in the excluded deposition, which, in our opinion, were competent.

The evidence shows without contradiction that a year or two before the certificate was applied for, Thomas F. Clover went to Eureka Springs, Arkansas, and after being there several days, was unable to arise from his bed and complained of pain and trouble in his lower limbs. There was evidence introduced by appellant to show that locomotor ataxia results from syphilis or venereal disease. To meet and overcome this evidence, appellee introduced evidence to show that deceased had been during the preceding days riding horse back and tramping over hills, to show that the trouble with his legs was caused by the unaccustomed exercise, he being a man of sedentary habits. Mrs. Losta Clover testified in the deposition that was excluded, that her husband, the deceased, was afflicted with locomotor ataxia prior to his death; that prior to the date of his application for membership he took irregular steps, and that the morning he left for Eureka Springs he could hardly walk to the boat, and that he had difficulty in walking on other occasions, and that this was more than three or four times.

This is not a suit between man and wife. It is not a suit in which the husband's estate is a party, but it is a suit between the executor of the mother and the insurance company. Mrs. Losta Clover, surviving widow of deceased, was not a competent witness to state anything that she learned by conversations with her husband or to state anything he said to her or she to him. We can see no reason why, as between these parties, she was not competent to testify to the fact that her husband had locomotor ataxia, and that, on the morning he left for Eureka Springs, he could scarcely walk to the boat, and that he took irregular steps, before the date of the application, and frequently had difficulty in walking.

The evidence in this record is so evenly balanced that we are of the opinion that the evidence so improperly

excluded might have caused, had it been admitted, the jury to find for the appellant.

An instruction to the jury, asked by appellee and given was as follows:

"The court instructs the jury that the words 'sound body, mind, and health, and free from disease or injury,' as used in the application which forms part of said policy, does not import that the insured at the time of making said application is absolutely free from all infirmities, or from all tendency to disease, but that the person said to be of sound body, mind, and health and free from disease or injury, is in a reasonably good or sound state of physical and mental health, and that he is free from any disease or illness that tends seriously or permanently to weaken or impair his constitution."

Appellant urges that the definition of "sound body, mind and health," contained in this instruction is incorrect. In Court of Honor v. Dinger, 221 Ill. 181, the court, in passing on an instruction in the following words, "The court instructs the jury that the words 'good health,' when applied to a human being, mean that the person said to be in good health is in a reasonably good state of health, and that he is free from any disease or illness that tends seriously or permanently to weaken or impair the constitution," said, "This instruction gives a reasonable definition to the term good health, and we think a correct one." In Brown v. Metropolitan Life Insurance Company, 65 Mich. 306, the court defining "sound health" as appearing in an application for insurance, said: "It is a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, not mere temporary indisposition which does not tend to weaken or undermine the constitution of the assured." May on Insurance, 3rd ed., 387; Manhattan Life Insurance Company v. Gardner, 82 Fed. Rep. 989.

The expression "sound health" and "good health" being of the same import, we think that the instruction

complained of gives a correct definition of the words "sound body, mind and health."

For the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

WILLIS, J.   A rehearing was granted to permit appellee to secure an amendment to the bill of exceptions, which, it was alleged, would show that no error was committed by the court in sustaining the objection to the deposition of Losta Clover. Such an amendment was made in the court below and appellant took a bill of exceptions preserving the evidence upon which the amendment was based. That record was filed here by leave of court and a motion was made by appellant to strike from the record the amendment to the bill of exceptions. That motion was taken with the case. The bill of exceptions taken upon that motion shows that the order giving leave to amend was based upon affidavits of the recollections of witnesses as to what occurred when the deposition was offered in evidence at the trial. This was after the trial term.

A record may be amended after the term at which it is made has elapsed by an order of the court entered *nunc pro tunc,* when by reason of a clerical misprision it does not speak the truth. The amendment must however, be based upon some official or *quasi*-official note or memorandum or memorial paper remaining in the files of the cause, or upon the records of the court, and a fact proposed to be incorporated into a record to supply an omission cannot rest in the recollection of the judge or other person, or be based upon *ex parte* affidavits or testimony after the event has transpired. Dougherty v. The People, 118 Ill. 160; Tynan v. Weinhard, 153 *id.* 598; Village of No. Chillicothe v. Burr, 178 *id.* 218; Chicago, Burlington & Quincy Railroad Co. v. Wingler, 165 *id.* 634; Dreyer v. People, 188 *id.* 40; Hubbard v. The People, 197 *id.* 15; Wesley Hospital v. Strong, 233 *id.* 153. In Tynan v. Weinhard,

*supra,* it was said: "It must be shown by the production of some note or memorandum from the records or quasi records of the court, or by the judge's minutes, or some entry in some book required to be kept by law, or in the papers or files in the case. It cannot be determined from the memory of witnesses, or by the recollection of the judge himself." "The memorial paper or minute by which a record may be amended must be made and preserved as a part of the record, pursuant to law. A private memorandum of a witness is not sufficient." Dougherty v. People, *supra.*

As this amendment made at a later term, was not based on any official or *quasi*-official record or memorandum or memorial paper, remaining in the files of the case, or upon records of the court, but solely upon the *ex parte* affidavits based upon the recollection of the witnesses, the motion to strike the amendment from the files must be and is granted. The case then stands as before the rehearing. With this addition, the former opinion is adopted and ordered refiled.