The People of the State of Illinois, Defendant in Error,
v. Peter Koegel, Plaintiff in Error.

Gen. No. 34,991.

Opinion filed October 9, 1931.

DANIEL WEBSTER, for plaintiff in error.

JOHN A. SWANSON, State's Attorney, for defendant in error; HENRY T. CHACE, JR., OTHO S. FASIG and EDWARD E. WILSON, Assistant State's Attorneys, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

By this writ of error plaintiff in error, Peter Koegel, seeks to reverse a judgment of the municipal court which adjudged him guilty of carrying a revolver concealed on his person and imposed a sentence.

It appears from the record that the plaintiff in error was arrested without a warrant and taken before the court and by leave of court an information was filed charging that Peter Koegel on November 21, 1930, at the City of Chicago, unlawfully carried a pistol or revolver concealed on or about his person, in violation of Cahill's St. ch. 38, ¶ 141 (4); ch. 38, section 155 (Smith & Hurd). He was arraigned, entered a plea of not guilty, waived a jury trial, and the cause went to trial before the court. Thereupon the court heard the evidence and arguments of counsel and found plaintiff in error guilty of carrying a revolver concealed on his person as charged in the information, and he was sentenced, a motion to vacate the judgment and grant a new trial having been overruled. Counsel representing the plaintiff in error in this court did not appear for him in the trial court.

There are some preliminary points made by plaintiff in error to be disposed of before we reach the main question in the case. It is urged as a ground for reversal the bill of exceptions shows that two, and possibly three, witnesses were not sworn before they testified. This contention is not sustained by the record. The bill of exceptions shows that the witnesses Harold J. Shinnick, Peter Koegel, Nick Borsa and Mrs. N.

Borsa, were sworn and in whose behalf they testified. The testimony of officer Matthew Cunningham commenced with an interrogation by the State's attorney. The testimony of Sam Merle, a witness for plaintiff in error, commenced with a question propounded by the court and finally the bill of exceptions shows that the attorney for plaintiff in error propounded the following question: ''(To Officer) When you took them out of his pocket (referring to the revolvers) you took them out in his presence?'' The record does not show that these witnesses were not sworn and there is nothing in the bill of exceptions from which it can be said that these witnesses were not sworn. It has been held that where the bill of exceptions recites that a witness testified, in the absence of any showing to the contrary the presumption of law is that he testified under oath or averment—in other words, that he was sworn. (*People v. Krotz,* 341 Ill. 214, 219.)

It is next contended that the guilt of the plaintiff in error was not proved beyond a reasonable doubt, and it is argued that there was no proof that the weapons found in the possession of the plaintiff in error were concealed on or about his person. We think the evidence is to the contrary, and have no doubt of his guilt. He admitted on the stand that there were two guns found in his pocket, and officer Cunningham testified that the guns were loaded; and the officer, interrogated by the plaintiff in error's attorney, testified that the guns were taken out of plaintiff in error's pocket. But it is argued that this evidence does not prove that the guns were concealed on or about his person and it is suggested that the guns might have been shot guns, machine guns, large massive coast defense guns or rifles, which it would be impossible to conceal in a pocket. To this contention it is sufficient to say that it appears from the record that the guns were shown to the court, and that counsel for the plain-

tiff in error in the examination of Nick Borsa, a witness for plaintiff in error, described the weapons as "pistols." This court will not reverse a judgment on competent evidence unless it clearly appears that there is a reasonable doubt of guilt, because the trial court has the advantage of seeing the witnesses and from all the surrounding circumstances is better able to reach a correct conclusion than a reviewing court. (*People v. Reed*, 287 Ill. 606, 610.)

Now, as to the important question in the case that the venue was not proved as laid in the information, the plaintiff in error arguing, that the defendant in error failed to prove that the offense of carrying concealed weapons was committed in the City of Chicago. It appears from the record that the information was filed in the municipal court of Chicago and charged the plaintiff in error with unlawfully carrying concealed on or about his person, a pistol or revolver, in the City of Chicago on November 21, 1930, and that from the evidence presented to the trial court, he found the plaintiff in error guilty, in manner and form as charged in the information. An examination of the evidence shows that the plaintiff in error testified that he went to a party with a friend, in a cab, "up north"; stopped to see another friend and got these guns on the street. Sam Merle, a taxicab driver, testified that he picked up the plaintiff at "Ogden and North Avenue" and was told to drive to "3730 Broadway." Nick Borsa testified he met Koegel "on the sidewalk in front of a restaurant," and that they went up to some place on "Broadway" and then to "Division and Clark Street." During the trial plaintiff in error said the guns were found by the officer at the "bureau." It is apparent from this testimony that there was no direct evidence that "up north," "Ogden and North Avenue," "3730 Broadway," "Division and Clark Street," or the "bureau" were in the City of Chicago.

Proof of the venue as laid is as essential as the averment of it and must be made by the State as a part of its case in order to warrant a conviction. (*Dougherty v. People*, 118 Ill. 160; *Moore v. People*, 150 Ill. 405.) But it has also been held that it is sufficient proof of venue, if the evidence as a whole leaves no reasonable doubt as to the act having been committed at the place laid in the indictment, even though no one testifies, in express words, where the offense was committed. (*Weinberg v. People*, 208 Ill. 15; *People v. Schmidt*, 292 Ill. 127; *People v. Shaw*, 300 Ill. 451.) Evidence of a fact may be derived from inference, although there be no positive statement of its existence. Judges are allowed to use their common sense and common observation and general knowledge in considering evidence and drawing the proper inference from it. (*Robbins v. People*, 95 Ill. 175.) The venue of an offense may be proven like any other fact, in a criminal case. It need not be established by positive testimony nor in the words of the information. It is sufficient if from the facts appearing in evidence the only rational conclusion which can be drawn is that the offense was committed in the county alleged. (*Weinberg* case, *supra*, citing *Weinecke v. State*, 34 Neb. 14.) In the *Weinecke* case the court said, page 24: "It will be presumed that the trial court and jury knew the boundaries of the county where the trial took place and that the town of Chapman was in such county." In *Sullivan v. People*, 122 Ill. 385, it was held that proof that a crime was committed in Chicago is proof that it was committed in Cook county, as the court will take judicial notice that Chicago is in Cook county. In *People v. Suppiger*, 103 Ill. 434, the court said "it will take judicial notice that the town of Highland is situated in the county of Madison." Courts will take judicial notice without proof of whatever ought to be generally known within the limits of their jurisdiction. (*Lanfear*

*v. Mestier,* 89 Am. Dec. 658, 661.) In *Jones v. United States,* 137 U. S. 202, 214, the court said: "All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer," and in the case of *The Appollon,* 22 Wheaton 372, the court, speaking through Mr. Justice Story, said: "It has been very justly observed at the bar, that the court is bound to take notice of public facts and geographical positions." A court will generally take notice of whatever ought to be generally known within the limits of its jurisdiction (*Gunning v. People,* 189 Ill. 165), and will take notice of the streets (*Brady v. Page,* 59 Cal. 52), and the situation of the streets, squares and public grounds. (*Prince v. Crocker,* 166 Mass. 347.)

In *State v. Ruth,* 14 Mo. App. 226, the information charged the defendant with petit larceny and alleged that the offense was committed in the City of St. Louis. The evidence showed the names of several streets in the City of St. Louis, but there was no positive testimony that those streets were in that city. The court said:

"It is true that no witness says in so many words that the offense was committed in the city of St. Louis. But this is not necessary. It is enough if the testimony was such as ought to have satisfied the trier of the fact that the place of the offense was that laid in the information. . . . But we need have no difficulty in judicially recognizing the fact that Washington Avenue, Morgan Street and Christy Avenue are old, established, and well-known streets of St. Louis—the city in which we sit as a court,—and that this knowledge prevails generally throughout the city, and must have been possessed by the trier of the fact in the present case. There can be no doubt from the evidence that the offense spoken of by the witnesses is spoken

of as having been committed in the city of St. Louis, though they do not expressly name the town."

In *State of Missouri v. Burns,* 48 Mo. 438, the defendant was charged with having committed murder within the county of St. Louis. The proof showed that it was committed in Mullanphy street. The witnesses all spoke of the murder as taking place on Mullanphy street, but it was not expressly stated anywhere that Mullanphy street was in the county or City of St. Louis. The court said, p. 439:

"The jurisdiction of the Criminal Court extends over the county of St. Louis, and the Legislature has recognized the city of St. Louis as being within the county of St. Louis. If there was evidence to reasonably satisfy the jury that the crime was committed in the city, that was sufficient. In criminal trials it must always be shown that the offense of which the prisoner is convicted was committed within the jurisdiction of the court. . . .

"But the question of venue or jurisdiction is always a question of fact, and may be proved like any other fact. If the evidence raises a violent presumption that the offense for which the prisoner is indicted was committed in the county where he was tried, it is sufficient." (See also *State v. West,* 69 Mo. 401.)

Plaintiff in error calls our attention to *Dougherty v. People,* 118 Ill. 160, and *People v. O'Gara,* 271 Ill. 138, in which it was said that there is no rule of law that requires the court to judicially know that certain streets and numbers are in Chicago, where the record does not affirmatively show that the offense charged was committed as laid in the indictment. We believe those cases are distinguishable from the instant case and that the applicability of the rule announced in those cases is limited to the cases tried in courts of general jurisdiction. The court in the *Dougherty* and *O'Gara* cases, *supra,* had jurisdiction over the entire county

and the county contains many cities and villages, all within the jurisdiction of the court. The evidence there mentioned streets by name and gave house numbers, and so the court said it would not take judicial notice that a certain street named is in any particular city named in that county; the instant case however was tried by a city court, having jurisdiction only in the City of Chicago. The case of *People v. Savage,* 220 Ill. App. 32, also cited by plaintiff in error, was tried in the city court of Mattoon, but the facts there distinguish it from the facts in the instant case. The question in the *Savage* case was as to the exact boundaries of anti-saloon territory. As part of the city was in such territory and part was without, and as the evidence failed to show in which part of the city the act took place, the court held that the venue was not properly proven.

We believe, after mature consideration, in view of the authorities and precedents cited, that the evidence, taken as a whole, leaves not the slightest doubt, and the only rational conclusion which can be drawn is, that the offense was committed in Chicago, and the judgment will be affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.